UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CASE NO.: 3:23-cv-00623-VDO

KRISTIE MASUCCI,

    Plaintiff,

v.

UNITED STATES OF AMERICA,

    Defendants.
_____/           March 7, 2024

## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO MOTION TO DISMISS [23]

### INTRODUCTION

Plaintiff's operative complaint has seven counts: II, III, IV, V, VI, VII, and IX. Although the Defendant United States of America's motion to dismiss, ECF No. 23, purports to seek dismissal of counts II, III, IV V, VI, and VII, which would leave only count IX remaining in the complaint, the Defendant's motion to dismiss fails to address count II. Accordingly, this memorandum will address Defendant's arguments to dismiss counts III, IV, V, VI, and VII.

Defendant makes three arguments to dismiss counts III—VII. Each of Defendant's arguments fails. As a preliminary matter, all three arguments rely on matters outside the pleadings, and all three arguments require the benefit of full discovery—and potentially an evidentiary hearing—before a determination can be made.

*First*, the Defendant argues that alleged sexual assault by Robert Greene, MD while he was the prison doctor at FCI-Danbury was "outside the scope of employment," as a matter of tort law, ECF No. 23 at 5-7 of 18; *second*, the Defendant argues that claims arising from the alleged sexual assault are time-barred, *id.* at 8-11 of 18; and *third*, the Defendant argues that claims based on the

failure to release the Plaintiff on home confinement before her infection with COVID-19 are barred by the discretionary function exception under the FTCA, *id.* at 11-18 of 18.

These arguments fail because (1) the Defendant ignores agency principles upon which the Defendant can be held liable for sexual assault by its correctional employee; (2) discovery and fact-finding is required on the timeliness issue, including the precise date of the sexual assault and the potential existence of equitable tolling; and (3) discovery is required on the home confinement issue, on which the Defendant relies on matters from outside the pleadings that have not been subject to the testing of the adversarial process.

The Plaintiff will examine each of the United States of America's arguments in turn.

**I.     THE UNITED STATES CAN BE HELD LIABLE UNDER CONNECTICUT LAW FOR DR. GREENE'S ALLEGED SEXUAL ASSAULT UNDER AGENCY PRINCIPLES**

The Defendant argues that counts III, VI, and VII should be dismissed because Connecticut courts would not recognize the liability of an employer, here the United States, for an alleged sexual assault perpetrated by an employee, here Dr. Greene. The Defendant correctly argues that this is a matter of Connecticut law. ECF No. 23 at 5-6 of 18. But Defendant gets Connecticut law wrong because under agency principles, the United States can be held liable for the sexual assault perpetrated by its prison doctor.

The Defendant focuses only on the doctrine of *respondeat superior* and its scope-of-employment inquiry. The Defendant emphasizes language from cases analyzing the doctrine of *respondeat superior*, in which the employee needs to be "actuated at least in part by a purpose to serve a principal," ECF No. 23 at 6 of 18, citing *Fiano v. Old Saybrook Fire Co. No. 1, Inc.*, 332 Conn. 93, 102-03 (2019). The Defendant cites cases holding that "sexual assault [is] outside the scope of . . . employment and not in furtherance of the employer's business," *id.*, e.g. *Atwood v.*

*Town of Ellington*, 427 F.Supp.2d 136, 143-44 (D.Conn. March 30, 2006), *Gutierrez v. Thorne*, 13 Conn.App. 493, 498-99 (1988), & *Capers v. Connecticut Behav. Health Assocs., P.C.*, 2021 WL 2593880, at *1 (Conn. Super. Ct. June 9, 2021). But the United States's argument fails to consider liability under agency principles as applied in tort actions under the Restatement (Second) or Restatement (Third) of Agency, as adopted by the Connecticut Supreme Court.

It is well-established that "[s]cope of employment does not define the only basis for employer liability under agency principles." *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 758 (1998). The Defendant's argument ignores the doctrine of agency entirely. Plaintiff submits that there are at least two bases to find the United States liable under Connecticut law under agency principles in the case at bar, either of which should be applied by this Court, or reserved and certified as questions for the Connecticut Supreme Court.

### A.     Vicarious Liability Under the Restatement (Second) of Agency § 219(2)(d).

Connecticut has long followed—and continues to follow—the American Law Institute's venerable Restatement (Second) of Agency, published in 1958. *See, e.g.*, *Reserve Realty, LLC v. Windemere Reserve*, 346 Conn. 391 (2023); *Gagliano v. Advanced Specialty Care*, 329 Conn. 745 (2018); *Cefaratti v. Aranow*, 321 Conn. 593 (2016); *Gateway Co. v. DiNoia*, 232 Conn. 223, 240 (1995); *Beckenstein v. Potter & Carrier, Inc.*, 191 Conn. 120 (1983). One provision that the Connecticut Supreme Court has not, to the undersigned's knowledge, yet had opportunity to examine is § 219(2)(d), "When Master is Liable for Torts of his Servants." The Connecticut Supreme Court would likely adopt § 219(2)(d), and hold that it applies in the case at bar, for the following reasons.

Restatement (Second) of Agency § 219 (2)(d) states that an employer may be vicariously liable when the employee acts outside the scope of employment but "purported to act or to speak

on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation."

The Supreme Court of the United States, in adopting § 219 (2)(d) in Title VII cases, interpreted the "aided in accomplishing the tort" phrase as a separate exception from the "reliance upon apparent authority exception," *Faragher v. City of Boca Raton*, 524 U.S. 775, 801-02 (1998). Under either exception, the United States could be held liable for Dr. Greene's alleged sexual assault while serving as a prison doctor.

It cannot be disputed that Dr. Greene's agency relationship with the United States Department of Justice, Bureau of Prisons aided him in accomplishing the sexual assault alleged here. Dr. Greene would not have been in his position, as an examining prison gynecologist, to violate Ms. Masucci, but for his position as the prison gynecologist. His position as the prison doctor gave him access to vulnerable inmates like Ms. Masucci and the instrumentalities of his position aided in the accomplishment in the assault. Accordingly, the tort was "accomplished by an instrumentality, or through conduct associated with the agency status," *Turner v. Wash. Metro. Area Transit Auth.*, 853 F.Supp.2d 134, 137 (D.D.C. 2012) (quoting *Gary v. Long*, 59 F.3d 1391, 1397 (D.C. Cir. 1995)), bringing his conduct within § 219 (2)(d), and rendering the United States liable under agency principles.

This is the correct result. When an officer of the law commits a sexual assault "by use of instrumentalities associated with [the officer's] official position," *Buie v. District of Columbia*, 273 F.Supp.3d 65, 68 (D.D.C. 2017) (quoting *Gary*, 59 F.3d at 1397), the employer can and should be held liable under principles of agency, and a Connecticut court would so hold. (It appears to be a matter of first impression.) Like the officer in *Buie,* Dr. Greene had access to agency spaces and credentials that aided in the alleged tort of sexual assault. Arguably, he was even more aided by

the agency relationship than the police officer in *Buie*, as a prison doctor with all sorts of authority over inmates in a secured facility where he could open locked spaces, had access to surveillance video, had total authority over inmates, and had access to prison resources and supplies.

Among other reasons, the Connecticut Supreme Court would hold the employer, here the United States, liable in this scenario because of public policy reasons. Without the potential for vicarious liability in a sexual assault case such as this, "the risk of misconduct [will be] placed on a class of victims poorly positioned to protect themselves," *Sherman*, 190 A.3d 148, 189; *Pena*, 110 F.Supp.3d at 1135 ("There is danger inherent in granting one person extraordinary power over another, and the granting of that power should, thus, carry with it some accountability."). *Cf., e.g., Rizzuto v. Davidson Ladders, Inc.*, 905 A.2d 1165, 1177-78 (Conn. 2006) (considering whether existing nontort remedies adequately compensate victims in deciding whether to recognize a tort of intentional spoliation of evidence).

The Connecticut Supreme Court would therefore hold that the employer, here the United States, is liable for the sexual assault alleged by Ms. Masucci, an inmate under the United States's care, custody and protection.

The Connecticut Supreme Court would not be alone in this. At least five states—Alaska, Delaware, New Jersey, New Mexico, and Vermont—have found employers vicariously liable for sexual assaults committed by their employees based on the aided-by-agency theory contained in the Restatement (Second) of Agency § 219(2)(d). *See, e.g., P.J. v. City of Jersey City*, 2022 WL 16949544 (D.N.J. Nov. 15, 2022) (holding employer liable for police officer sexually assaulting eight-year-old boy); *Pena v. Greffet*, 110 F.Supp.3d 1103 (D.N.M. 2015) (holding employer liable for correctional officer's sexual assault of woman who was incarcerated); *Ayuluk v. Red Oaks Assisted Living, Inc.*, 201 P.3d 1183 (Alaska 2009) (holding employer liable for caregiver's sexual

assault at assisted living home for mentally disabled residents); *Sherman v. State Dep't of Pub. Safety*, 190 A.3d 148 (Del. 2018) (holding employer liable for police officer's threat to make arrestee spend weekend in jail if she refused to perform oral sex on him); *Hardwick v. Am. Boychoir Sch.*, 902 A.2d 900 (N.J. 2006) (holding employer liable for school music director's sexual assault of boarding student); *Spurlock v. Townes*, 368 P.3d 1213 (N.M. 2016) (holding employer liable for correctional officer's sexual assault of three incarcerated women in secluded "blind spots" beyond the range of surveillance cameras); *Doe v. Forrest*, 853 A.2d 48 (Vt. 2004) (holding employer liable for on-duty police officer's harassment and sexual assault of female cashier at convenience store). *See generally* Tori Klevan, *Institutional Liability for Sexual Violence in Prisons Based on The Aided-By-Agency Theory*, 92 FORDHAM L. REV. 3 (Dec. 2023) (collecting case law). This case has allegations that mirror the allegations of the prior cases in other states that have recognized liability under § 219(2)(d).

This Court should predict that Connecticut would join Alaska, Delaware, New Jersey, New Mexico, and Vermont on this issue if the question were squarely put before the Connecticut Supreme Court. The Connecticut Supreme Court would hold that where, as here, (1) the employer has delegated authority to the employee to control important elements of the victim's life or livelihood and (2) the empowered employee was aided by the employer-conferred authority in committing a sexual assault, the employer is vicariously liable under agency principles.

Correctional employees in prisons and jails present the most sensible and straightforward application of the "aided by agency" principle embodied in § 219(2)(d). Correctional institutions delegate significant power to correctional employees to control nearly every element of inmates' lives and livelihoods. When correctional employees sexually assault inmates in the confines of the facility, they necessarily use their employer-conferred power to sexually assault the victim.

6

Correctional employees' power far exceeds the power of supervising employees observed by the Supreme Court in *Faragher* and *Ellerth* in the ordinary employment context, as courts have observed. *See, e.g.*, *Pena*, 110 F.Supp.3d at 1103 ("[A]n inmate cannot simply quit the job of being a prisoner."). Accordingly, the employer should—and would—be held liable in a case such as this, under Connecticut law.

### B. Apparent Authority Under the Restatement (Third) of Agency § 7.08

In addition to the foregoing and also in the alternative, the Connecticut Supreme Court would hold the United States liable under the principles of apparent authority contained in the Restatement (Third) of Agency, published by the American Law Institute in 2006. In *Cefaratti v. Aranow*, 321 Conn. 593, 609 (2016), the Connecticut Supreme Court, drawing heavily from the Restatement (Third) as well as parts of the Restatement (Second), held that "the doctrine of apparent authority and the doctrine of apparent agency may be applied in tort actions." So too here—the Connecticut Supreme Court would conclude that the doctrine of apparent agency applies in this case to hold the employer, here the United States, liable for the sexual assault of Ms. Masucci.

In adopting the doctrine of apparent agency, the Connecticut Supreme Court set out two alternative means by which a plaintiff may establish it.

First, the plaintiff may prove that (1) the principal held itself out as providing certain services; (2) the plaintiff selected the principal on the basis of its representations; and (3) the plaintiff relied on the principal to select the specific person who performed the services that resulted in the harm complained of by the plaintiff, *id.*; in the alternative, the plaintiff may prove that (1) the principal held the apparent agent or employee out to the public as possessing the authority to engage in the conduct at issue, or knowingly permitted the apparent agent or employee

7

to act as having such authority; (2) the plaintiff knew of these acts by the principal, and actually and reasonably believed that the agent or employee or apparent agent or employee possessed the necessary authority; and (3) the plaintiff detrimentally relied on the principal's acts, i.e., the plaintiff would not have dealt with the tortfeasor if the plaintiff had known that the tortfeasor was not the principal's agent or employee. *Id.*

The plaintiff can establish apparent agency under either of these doctrines.

First, Ms. Masucci can prove (1) that Dr. Greene was held out as providing obstetric and gynecological medical services by the United States of America; (2) that Ms. Masucci selected Dr. Greene as her doctor based on the United States of America holding him out as the only provider available for obstetric and gynecological medical services; and (3) Ms. Masucci relied on the United States of America to select Dr. Greene who performed the services that resulted in the harm complained of by Ms. Masucci.

In the alternative, Ms. Masucci can prove (1) that the United States of America held Dr. Greene out to the public as possessing the authority to act on their behalf to provide obstetric and gynecological medical services, or knowingly permitted Dr. Greene to hold himself out in that regard, (2) Ms. Masucci knew of the United States of America holding out Dr. Greene and reasonably believed that Dr. Greene possessed the United States of America's authority, and (3) Ms. Masucci detrimentally relied on the United States of America's imposition of Dr. Greene as its agent or employee, i.e., if Ms. Masucci knew that Dr. Greene was not acting as the United States of America's prison obstetrician/gynecologist, Mr. Masucci would not have dealt with Dr. Greene.

In *Cefaratti*, the Connecticut Supreme Court thrice cited (and reprinted in its entirety in a footnote) the Restatement (Third) of Agency § 7.08, which provides that the principal is vicariously liable for a tort committed by a person with apparent authority: "A principal is subject

to vicarious liability for a tort committed by an agent in dealing or communicating with a third party on or purportedly on behalf of the principal when actions taken by the agent with apparent authority constitute the tort or enable the agent to conceal its commission." This principle straightforwardly applies to this case.

Because Dr. Greene's actions were taken with the apparent authority of the United States of America and because his status as the United States of America's prison doctor enabled him to conceal the commission of the alleged tort, the United States of America is subject to vicarious liability under the agency principles of the Restatement (Third) of Agency in this case. Because apparent authority as defined above has been adopted by the Connecticut Supreme Court, the Connecticut Supreme Court would recognize the United States of America's liability in this case regarding an alleged rape by a prison doctor.

### C. Certification to the Connecticut Supreme Court

To the extent that this Court is doubtful on this dispositive issue of Connecticut law,[1] it should certify this issue of law to the Connecticut Supreme Court. *See* Conn. Gen. Stat. § 51-199b; *Munn v. Hotchkiss Sch.*, 795 F.3d 324, 334 (2d Cir. 2015); *O'Mara v. Town of Wappinger*, 485 F.3d 693, 698 (2d Cir. 2007). But certification may be premature at this stage of the litigation. *See Wappinger*, 485 F.3d at 698 (courts should consider the capacity of certification to resolve the litigation). Discovery is needed to develop the facts necessary to certify these legal questions. *See*

---

[1] Although, in *Jean-Charles v. Perlitz*, 937 F.Supp.2d 276, 286-87 (D.Conn. 2013), the district court dismissed vicarious liability claims against a principal based on an alleged agent's sexual abuse, the court's ruling hinged on the proposition that "Connecticut courts have consistently declined to apply the doctrine of apparent authority in tort cases, . . . ." *Id.* at 286. The Connecticut Supreme Court in *Cefaratti v. Aranow*, 321 Conn. 593 (2016) adopted the doctrine of apparent authority and overruled prior cases that were relied upon by the district court in *Jean-Charles v. Perlitz,* such as *Mullen v. Horton*, 46 Conn.App. 759 (1997), so *Jean-Charles* is no longer persuasive authority and can be distinguished on that ground.

9

§ 51-199b(f)(2), (g) (certifying court must set forth facts relevant to the question, or if parties cannot agree on statement of facts, certifying court shall determine relevant facts and state them as part of certification order).

Because there are issues of fact related to whether Dr. Greene was "aided in accomplishing the tort by the existence of the agency relation," Restatement (Second) Agency § 219(2)(d), or whether Dr. Greene's actions "with apparent authority constitute the tort or enable[d] [him] to conceal its commission," Restatement (Third) Agency § 7.08, the motion to dismiss can be denied or the issue can be deferred until the close of discovery, *see* Rule 56(d).

On a fuller record – or now, based on the plaintiff's allegations, if the Court believes it will advance the litigation – this Court can certify these legal questions to the Connecticut Supreme Court to determine the United States of America's liability.

## II. THE PLAINTIFF SHOULD BE PERMITTED DISCOVERY ON WHETHER CLAIMS BASED ON THE ALLEGED SEXUAL ASSAULT ARE TIME-BARRED, AND AN EVIDENTIARY HEARING SHOULD BE HELD BEFORE THIS COURT RULES ON EQUITABLE TOLLING.

The Defendant acknowledges that if it is established that the alleged sexual assault took place on or after May 24, 2020, or if the Plaintiff can establish equitable tolling, the Defendant's timeliness argument fails. ECF No. 23 at 9-10 of 18. Accordingly, the Plaintiff does not object to the Defendant's suggestion of "expedited . . . discovery," *id.* at 10, with the caveat that the discovery should be broadened from "the date of the gynecological exam in question" to also encompass bases for equitable tolling.

Bases for equitable tolling between January 14, 2020 and May 24, 2020 include, *inter alia*, the behavioral sequelae of an alleged sexual assault on Ms. Masucci by a person in a position of authority in the carceral setting; and the onset of the COVID-19 pandemic in early 2020. Both

issues affected whether Ms. Masucci acted with diligence and whether "extraordinary circumstances" existed. *Doe v. United States*, 76 F.4th 64, 70 (2d Cir. 2023) (reversing summary judgment based on timeliness in case alleging sexual abuse by federal official and remanding for evidentiary hearing on equitable tolling).

Because extraordinary circumstances and reasonable diligence exist here, the Plaintiff should be permitted to take discovery, then present facts, including expert testimony, on equitable tolling, if the United States of America is correct about the date of the alleged assault.

The timeliness issue should not be decided on the pleadings. Ordinarily, in situations such as this, an evidentiary hearing must be held. The Second Circuit recently ruled, reversing a motion for summary judgment in a sexual assault case where equitable tolling was invoked, "[i]n general, district courts should resolve the factual questions relevant to the equitable tolling of a statute of limitations, such as those surrounding a plaintiff's mental state." *Doe*, 76 F.4th at 70 (citing *Montin v. Est. of Johnson*, 636 F.3d 409, 414-15 (8th Cir. 2011). "And a district court generally should conduct an evidentiary hearing before making factual findings . . . ." *Id* (citing *Torres v. Barnhart*, 417 F.3d 276, 279 (2d Cir. 2005)).

This Court should heed the Second Circuit's warnings in *Doe* not to decide equitable tolling in a case alleging sexual assault by a federal official prematurely or based on an inadequate record. Accordingly, this Court should not decide the timeliness issue before the Plaintiff has the benefit of discovery regarding the date of the sexual assault and grounds for equitable tolling, including the psychological impact of the alleged sexual assault by the prison doctor and the onset of the COVID-19 pandemic at around the same time.

### III. THE DEFENDANT'S ARGUMENT REGARDING HOME CONFINEMENT, WHICH DOES NOT DISPOSE OF ANY COUNT OF THE COMPLAINT, SHOULD BE DEFERRED UNTIL AFTER THE PLAINTIFF HAS HAD AN OPPORTUNITY TO TAKE DISCOVERY.

The Defendant cites out-of-circuit decisions holding that claims based on BOP's failure to release individuals on home confinement are barred by the discretionary function exception of the FTCA. ECF No. 23 at 12-13 of 18. But the Defendant acknowledges the different context raised in this case by Judge Shea's May 12, 2020 TRO in *Martinez-Brooks v. Easter*, 459 F.Supp.3d 411 (D.Conn. 2020) and Attorney General William Barr's April 3, 2020 memorandum, which specifically addressed inmates incarcerated at FCI Danbury.

The Defendant first argues that Judge Shea's TRO and Attorney General Barr's memo failed to apply to the Plaintiff because, the Defendant contends, "Plaintiff possessed none of the COVID-19 risk factors recognized by the CDC at the relevant time." ECF No. 23 at 15 of 18. But the Defendant acknowledges that the Plaintiff's medical records—which it filed, and asserts are the only materials "available to prison officials to determine an inmate's medical vulnerability"—show that an attorney for the Plaintiff put officials at FCI Danbury on notice in May 2020 of two serious heart conditions she suffered. *Id.*

Defendant acknowledges that the CDC risk factors in Judge Shea's TRO include "serious heart conditions," *id.* at 16 of 18, but Defendant argues that because the heart conditions listed in the Plaintiff's attorney's letter from May 2020 are not the specific heart conditions listed after "serious heart conditions" in Judge Shea's order, the Plaintiff should not be considered to have had a "serious heart condition" under the order. We disagree. But at the very least, this is a matter that is deserving of further development in discovery and potential summary judgment practice, including potential expert testimony, before it should be determined.

The Defendant second argues that, "even if [Plaintiff] did possess COVID-19 risk factors," ECF No. 23 at 16 of 18, the decision not to place Plaintiff on home confinement was still an exercise of a discretionary function exempt from liability under the FTCA. To support this argument, the Defendant attaches a memo dated April 22, 2020 to its motion to dismiss, *id.* at 16-17 of 18, which outlines additional criteria for releasing inmates on home confinement; and also attaches correspondence between the then-Warden and the Plaintiff, *id.* at 17 of 18. These filings from the Defendant, disclosed for the first time in the motion to dismiss, and untested by the adversarial process, raise the question of what other memoranda, correspondence, or other guidelines or documentation may be available regarding the decision of whether to release the Plaintiff on home confinement.

Indeed, Defendant "recognizes that the timing of Plaintiff's release from FCI Danbury was unfortunate . . . ." *Id.* at 17 of 18. But before accepting the Defendant's invitation to simply conclude that "Plaintiff cannot show any specific mandatory directive was violated as it relates to her case," *id.*, this Court should allow the Plaintiff to take discovery and present facts. Accordingly, the motion to dismiss on this ground should be denied or deferred to the close of discovery.

<span style="font-variant:small-caps;">Conclusion</span>

The motion to dismiss, ECF No. 23, presents many matters outside the pleadings, and must be treated as a motion for summary judgment under Rule 56. *See* Rule 12(d). As a motion for summary judgment, it presents many matters about which the Plaintiff seeks to present facts that are currently unavailable, but are essential to justify its opposition, requiring denial of the motion or allowance of time to take discovery. *See* Rule 56(d). Accordingly, the motion to dismiss should be denied in its entirety; or in the alternative, deferred to the close of discovery or

some intermediate point before the close of discovery after the Plaintiff has had an opportunity to take discovery.

Respectfully submitted,

PLAINTIFF KRISTIE MASUCCI

By: /s/Alexander T. Taubes
470 James St., Ste 007
New Haven, CT 06513
(203) 909-0048
alextt@gmail.com
ct30100

*Her Attorney*