UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------------------------------------- x
KRISTIE MASUCCI,                                              :
                                                              :
                                    Plaintiff,                :
                                                              :
                                                              :   MEMORANDUM &
              -against-                                       :   ORDER
                                                              :
UNITED STATES OF AMERICA,                                     :   3:23-cv-00623-VDO
                                                              :
                                    Defendant.                :
------------------------------------------------------------- x
```

**VERNON D. OLIVER**, United States District Judge:

Plaintiff Kristie Masucci brings this action against Defendant United States of America ("the Government"), alleging that she was injured due to the tortious conduct of Dr. Robert Greene Jr., a medical doctor employed by the Federal Bureau of Prisons ("BOP"), during her time incarcerated at the Federal Correctional Institution in Danbury, Connecticut ("FCI Danbury"), pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671 *et seq*.

On December 18, 2023, the Government moved to dismiss Counts II, III, IV, V, VI, and VII of the complaint, in whole or in part, under Fed. R. Civ. P. 12(b)(1), (6). (Def. Mot., ECF No. 23.) Plaintiff submitted a memorandum in opposition to the Government's motion on March 7, 2024. (Pl. Opp'n., ECF No. 30.) The Government submitted a reply brief in further support of its motion on March 20, 2024, in which it withdrew, without prejudice, all bases for its motion to dismiss except for its 12(b)(1) argument concerning the Court's subject matter jurisdiction over Counts III, VI, and VII, which seek to hold the Government liable for the alleged tortious sexual conduct of Dr. Greene. (Def. Reply, ECF No. 31.) For the reasons set forth below, the Government's motion to dismiss counts III, VI, and VII for lack of subject matter jurisdiction is **DENIED**.

I.      **BACKGROUND**

    **A. Factual Background**

The Court assumes the truth of the factual allegations in the complaint for the purpose of resolving the Government's motion to dismiss Counts III, VI, and VII.

Plaintiff Kristie Masucci served and completed twenty months and three weeks of a twenty-four-month carceral sentence at FCI Danbury for Conspiracy to Commit Healthcare Fraud from January 2, 2020, to September 24, 2021. (Am. Compl., ECF No. 19 ¶¶ 18–19.) Plaintiff states that she was diagnosed with a "psychological disease of anxiety" before her incarceration for which she is medicated. (*Id.* ¶ 20.)

Plaintiff alleges she was sexually assaulted by Dr. Robert Greene, an Obstetrician and Gynecologist ("OB/GYN") employed by the BOP, during a routine gynecological exam. (*Id.* ¶¶ 38–39.) According to the Government, the BOP records reflect that this exam occurred on January 14, 2020. (Answer, ECF No. 22 ¶ 42.) Per BOP Program Statement No. 6031.04, the protocol for such exams when conducted by a male doctor is that, except in emergency circumstances, "[a] female staff member will be present when a male provider performs breast and pelvic examinations." (Answer ¶ 40.) Plaintiff alleges that during her exam a female nurse stood "outside of a privacy curtain" and "did not view the exam," during which Dr. Greene "violated [her] while she was at her most vulnerable." (Am. Compl. ¶ 41.)

Although the complaint also includes counts related to Plaintiff's treatment and general prison conditions at FCI Danbury during the COVID-19 pandemic, presently the Government seeks only to dismiss three counts relating to the alleged sexual assault. (Def. Reply, ECF No. 31.) Accordingly, this opinion does not address any other causes of action included in Plaintiff's Amended Complaint.

**B. Defendant's Motion to Dismiss**

Pursuant to the Government's Renewed Motion to Dismiss (Def. Mot., ECF No. 23) and its subsequent Reply Brief in Further Support of Renewed Motion to Dismiss (Def. Reply, ECF No. 31), the Court has considered the following counts in which Plaintiff seeks to hold the Government directly and/or vicariously liable for the alleged tortious conduct of BOP employee Dr. Greene:

- III (Sexual Assault): Alleging the Government breached its duty of care because it did not implement reasonable precautions to prevent sexual assault, ignored prior complaints of sexual harassment, assault, or battery at FCI Danbury and other facilities run by the BOP or Department of Corrections, and failed to provide prompt, adequate medical care for Plaintiff's injuries. (Am. Compl. ¶¶ 50–55.)

- VI (Negligent Infliction of Emotional Distress): Alleging Dr. Greene breached his duty of care because he negligently sexually assaulted Plaintiff, failed to establish or follow adequate policies for gynecological exams and knew or should have known his conduct would cause severe emotional distress to Plaintiff and thus acted with negligent disregard of the consequences and complete indifference to Plaintiff's rights. (Am. Compl. ¶¶ 83–90.)

- VII (Intentional OR Reckless Infliction of Emotional Distress): Alleging Dr. Greene intentionally or recklessly engaged in outrageous conduct because he sexually assaulted Plaintiff, failed to establish or follow adequate policies for gynecological exams, and knew or should have known his conduct would cause severe emotional distress to Plaintiff and thus demonstrated reckless disregard for the mental suffering such conduct was substantially certain to cause. (Am. Compl. ¶¶ 90–98.)

The Government seeks to have the above counts dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, on the grounds that sovereign immunity applies to these claims. It also argues that the 28 U.S.C. § 1346(b) exception—waiving immunity for injuries caused by a Government employee "acting within the scope of his office or employment"—does not apply because "sexual assault [is] outside the scope of an employee's employment and not in furtherance of the employer's business." *Atwood v. Town of Ellington*, 427 F. Supp. 2d 136, 144 (D. Conn. 2006).

3

Plaintiff counters that per agency principles of Connecticut law—leveraging the Restatement (Second) of Agency—an employer may be vicariously liable for conduct outside the scope of employment if the employee seemed to "act or to speak on behalf of the principal" and there was reliance on that "apparent authority" or its relationship to the agency "aided in committing the tort." Restatement (Second) of Agency § 219(2)(d).

In the alternative, Plaintiff counters that the Connecticut Supreme Court has previously adopted Restatement (Third) of Agency § 7.08 and applied the "doctrine of apparent agency" because Plaintiff was "unaware" that Dr. Greene was *not* acting as the Government's prison gynecologist and "would not have dealt with him otherwise." (Pl. Opp'n. 7–9.)

Plaintiff also asserts that the Renewed Motion to Dismiss (ECF No. 23) "presents many matters outside the pleadings and must be treated as a motion for summary judgment under Rule 56" because discovery is required for her to properly argue her position. (*Id.* at 13.)

## II.  LEGAL STANDARDS

### A.  Challenges to Subject Matter Jurisdiction

A claim must be dismissed under Rule 12(b)(1) when the court "lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); Fed. R. Civ. P. 12(b)(1). Further, a court must dismiss a claim if it "determines at *any time* that it lacks subject-matter jurisdiction" over that claim. Fed. R. Civ. P. 12(h)(3) (emphasis added). In reviewing a jurisdictional challenge, a court must accept all factual allegations as true and draw all "reasonable inferences" in the plaintiff's favor, *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003), to determine whether the pleading alleges facts that "affirmatively and plausibly" support a plaintiff's assertion of jurisdiction. *Carter v United States*, No. 22-CV-6715 (KAM)(LB), 2024 WL 1345313, at *4 (E.D.N.Y. Mar. 29, 2024).

4

### B. Sovereign Immunity

In general, employees of the United States functioning in its official capacities are "immune from suit based on the principle of sovereign immunity." *Cnty. of Suffolk, N.Y. v. Sebelius*, 605 F.3d 135, 140 (2d Cir. 2010). Because this immunity is "jurisdictional in nature," a plaintiff must show that its claims fall under a valid exception to meet "the burden of proving by a preponderance of the evidence that [subject matter jurisdiction] exists." *Makarova*, 201 F.3d at 113. Absent evidence of such an exception, the claim must fail. *Doe v. Norwalk Bd. of Educ.*, No. 23-CV-0290 (JBA), 2023 WL 1353436 at *5 (D. Conn. Jan. 31, 2023).

The Federal Tort Claims Act (FTCA) waives immunity for certain claims, including those for injuries caused by "negligent or wrongful act[s] or omission[s]" of a Government employee "acting within the scope of his office or employment" such that "the United States, if a private person, would be liable . . . [under] the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). In short, "[t]he source of substantive liability under the FTCA is the law of the State." *Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019) (internal quotation marks and citations omitted). Thus, Connecticut law governs this case.

### C. Respondeat Superior

An employer may be liable for torts committed by an employee "within the scope of his employment" and "in furtherance of the employer's business." *Roe v. Hotchkiss Sch.*, 385 F. Supp. 3d 165, 170–71 (D. Conn. 2019); Restatement (Second) of Agency § 228. "Generally, [s]exual assault by an agent is . . . not in furtherance of the principal's affairs." *Roe* at 171 (alteration in original) (citation omitted). However, "it would be contrary to Connecticut law to adopt a per se rule against vicarious liability in cases involving sexual assault. Some factual inquiry is [required by] law." *Petrello v. Bemer*, No. X06-UWY-CV21-6067153-S, 2024 WL

5

1879734, at *5 (Conn. Super. Ct. April 26, 2024) (citations omitted). In fact, courts have honored FTCA claims even for intentional torts where the defendants acted "in furtherance of Government business." *Lipkin v. U.S. Sec. & Exch. Comm'n*, 468 F. Supp. 2d 614, 623 (S.D.N.Y. 2006).

"Conduct may be within the scope of employment, although done in part to serve the purposes of the servant." Restatement (Second) of Agency § 236. Specifically, "a defendant-employer may be liable for the acts of an employee [resulting] from a misguided effort to serve the principal, [where] those acts could be inferred to fall within the purview of their responsibilities." *Quichimbo v. Luow*, No. CV176069576S, 2018 WL 6629231 at *3 (Conn. Super. Ct. Nov. 26, 2018). *See, e.g.*, *Mullen v. Horton*, 700 A.2d 1377, 1380 (Conn. App. Ct. 1997) (a priest's sexual relationship with a plaintiff may be "misguided . . . psychological counseling" or "unauthorized, unethical, tortious . . . pastoral counseling"—but not "an abandonment of church business") (overruled on other grounds by *Cefaratti v. Aranow*, 141 A.3d 752 (Conn. 2016)); *cf. Girden v. Sandals Int'l*, 67 F. App'x 27, 28 (2d Cir. 2003) (a sailing instructor "deviated from the proper discharge of his duties" in sexually assaulting the plaintiff, thus acting outside the scope of employment).

Out of circuit cases involving claims of sexual assault during medical treatment and possible dual motives for the conduct suggest it is a question of fact whether the assault was within the scope of employment. *See, e.g.*, *Doe v. United States*, 912 F. Supp. 193, 195 (E.D. Va. 1995) (a Government psychologist's "consciously criminal or tortious act[s] may fall within the scope of employment" (internal quotation marks and citation omitted)); *Olson v. Connerly*, 457 N.W.2d 479, 500–01 (Wis. 1990) (the jury should consider whether a university

clinic physician was "actuated by an intent to serve his employer" or had "stepped aside from his employer's business to achieve an independent purpose of his own").

### D. Agency Principles

In determining whether the Government can be held liable for the tortious conduct of its agents in compliance with the FTCA, "[s]cope of employment sets the line." *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 423 (1995). Accordingly, Plaintiff's arguments leveraging principles of agency to establish liability for private employers whose employees act outside the scope of employment are not applicable and the relevant law is moot in the instant case.

## III.   DISCUSSION

Though the Government aptly points out that vicarious liability applied under agency principles falls outside the FTCA exception to sovereign immunity, it relies too heavily on the notion that, in general, "sexual assault [is] outside the scope of an employee's employment and not in furtherance of the employer's business" in its Motion to Dismiss. *Atwood*, 427 F. Supp. 2d at 136. The *Atwood* court was not remiss in its statement, as the broader body of caselaw tends to show a resistance by courts to apply vicarious liability to employers for sexual assault, even if the assault occurred during business hours while the employee was at work. However, the Government goes too far in its implication that a *per se* rule exists placing sexual assault invariably outside the scope of employment and thus outside the purview of the FTCA's respondeat superior immunity waiver.

The BOP is required to "provide for the protection . . . of all persons charged with and convicted of offenses against the United States," 18 U.S.C. § 4042(a), and thus has a duty of care to "safeguard" its prisoners. *Owens v. Haas*, 601 F.2d 1242, 1249 (2d Cir. 1979). The BOP seeks to ensure the physical health of its prisoners by conducting an "initial assessment of each

newly incarcerated inmate" to identify any "[u]rgent medical, dental, or mental health care needs." Fed. Bureau of Prisons, Program Statement No. 6031.04 at 23 (June 3, 2014), https://www.bop.gov/policy/progstat/6031_004.pdf.[1] Similarly, the BOP is required to have a medical professional "conduct a breast and pelvic examination" on female inmates as part of the initial complete physical examination given to all prisoners within fourteen days of commencing a "predictably long-term" incarceration. *Id.* at 27–28.

The facts of this case suggest that the question of whether sexual assault by a doctor during a gynecological exam can fall within the scope of employment is best suited to a factfinder at summary judgment or trial. Though none of the available documents provide additional details about the sexual assault (only that a female nurse was supposed to stand inside the privacy curtain during the exam but allegedly did not do so), a 12(b)(1) jurisdictional challenge requires the Court to accept the factual allegations as true and draw reasonable inferences in Plaintiff's favor.

Here, Plaintiff began her incarceration on January 2, 2020, and received a mandatory initial physical examination shortly thereafter, which included a gynecological exam on January 14, 2020. Because the exam was a necessary part of her entry into a BOP detention center, it has been plausibly alleged that Dr. Greene's exposure to and physical contact with

---

[1] In a motion to dismiss, the Court may consider a document not "incorporated by reference" if the complaint "relies heavily upon its terms and effect" such that it is "integral to the complaint." *DiFolco v. MSNBC*, 622 F.3d 104, 111 (2d Cir. 2010) (internal quotation marks and citation omitted). In her complaint, Plaintiff alleges a failure to follow protocol for examining female inmates. (Am. Compl. ¶¶ 40, 86(c), 92(c).) Program Statement No. 6031.04 is proof of such a protocol. As acknowledged by Defendant, the complaint relies heavily on that protocol's terms and effects, thus making it integral to the claims. *See* Answer ¶ 40 (admitting statement found in Program Statement No. 6031.04).

Plaintiff's internal and external sex organs during the gynecological exam were: (1) within the scope of his employment as an OB/GYN for a federal prison; and therefore (2) in furtherance of Government business—despite the tortious conduct alleged to have occurred in tandem with or instead of a proper exam. Like in *Mullen*, Dr. Greene's actions may ultimately be considered "unauthorized, unethical, [or] tortious," but still not found to be a complete "abandonment" of Government business. 700 A.2d at 1380. If so, the waiver of sovereign immunity outlined in the FTCA for the "negligent or wrongful act[s] or omission[s]" of a Government employee "acting within the scope of his office or employment" would apply. 28 U.S.C. § 1346(b).

      State and federal cases from Connecticut containing inapposite facts reflect a resistance by the courts to hold employers liable for sexual assault when the employee very clearly deviates from their duties by doing so—e.g., when the employee is a sailing instructor, *Girden*, 67 F. App'x 27, a labor recruiter, *Petrello*, 2024 WL 1879734, or an English teacher, *Roe*, 385 F. Supp. 3d 165—but in the context of a mandatory gynecological exam, the point of deviation is much less clear. Here, the complaint presents a unique set of facts wherein the employee's role necessitates exposure to and physical contact with Plaintiff's sex organs. The BOP policy requiring a second staff member to be present during gynecological exams conducted by a male doctor not only protects the prisoner from assault or malpractice but also protects that doctor from false accusations of such conduct. The existence of this policy itself implies that sexual assault is a possible consequence of work necessarily falling within the scope of Dr. Greene's employment as a prison OB/GYN.

      Because a court can dismiss claims for lack of subject matter jurisdiction at any time (either by motion or *sua sponte*) per Fed. R. Civ. P. 12(h)(3), further factual inquiry by way of discovery would be prudent before doing so. Dismissal without sufficient factual inquiry is not

only contrary to Connecticut law, *Petrello*, 2024 WL 1879734, at *5, but may inadvertently imply that the Government can *never* be held vicariously liable for sexual assault because it falls outside the scope of employment even for employees providing reproductive medical care to incarcerated citizens—an implication the Court seeks to avoid.

### IV.   CONCLUSION

The Motion to Dismiss Counts III, VI, and VII for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) is **DENIED** because—accepting all facts in the complaint as true and applying Connecticut substantive law—it may be reasonably inferred that the sexual assault against Plaintiff fell within the scope of Dr. Greene's employment at the BOP as a prison OB/GYN for the Government. The Clerk of Court is respectfully directed to terminate the pending Motion (ECF No. 23).

**SO ORDERED.**

Hartford, Connecticut
July 22, 2024

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge